COLÓN ET AL., DEMANDANTES Y APELADOS, *v.* SUCESIÓN DE J. M. BATISTA PÉREZ, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito de filiación.

No. 2220.—Resuelto en mayo 17, 1921.

APRECIACIÓN DE PRUEBAS—FILIACIÓN—NULIDAD DE DIVORCIO Y DECLARATORIA DE HEREDEROS.—Examinada la prueba que se inserta en la opinión del presente caso de filiación y nulidad de divorcio y declaratoria de herederos es preciso concluir que la corte de distrito no abusó de su discreción al apreciarla.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. José de Guzmán Benítez.*

Abogados de los apelados: *Sres. L. Muñoz Morales, M. Muñoz* y *G. Darder.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

Se ha interpuesto este recurso de apelación por los demandados contra la sentencia de la Corte de Distrito de San Juan, Sección Primera, que declara lo siguiente:

"Primero. Nulo y sin ningún valor ni efecto el procedimiento de divorcio, seguido ante esta corte de distrito bajo el número 411, por José Manuel Batista contra Paula Rodríguez.

"Segundo. A María Gil y Petronila Colón, hijas naturales reco-

nocidas de José Manuel Batista, con arreglo a los artículos 187 y 189 del Código Civil Revisado, tal cual estaban redactados antes de la enmienda introducida por la ley de nueve de marzo de mil novecientos once, y con arreglo a los artículos 193 y 194 del mismo Código Civil enmendados por la referida ley de nueve de marzo de mil novecientos once.

"Tercero. Que María Gil y Petronila Colón, que en realidad son Batista y Colón tienen derecho a usar el apellido de su padre José Manuel Batista, y a una porción legítima en la herencia del mismo con arreglo a los artículos 195, Código Civil, y secciones 1 y 14 de la ley de nueve de marzo de mil novecientos cinco, para enmendar los artículos 795, 796, 797, 801. 811, 812, 815, 821, 822, 823 y 824 del Código Civil.

"Cuarto. Nula y sin ningún valor ni efecto la institución de herederos contenida en el testamento otorgado por José Manuel Batista en catorce de noviembre de mil novecientos diez y siete, y declarado tal testamento por esta corte, en catorce de enero de mil novecientos diez y ocho, quedando los legados que en él aparecen, con validez legal en cuanto no sean inoficiosos.

"Y se imponen las costas a la parte demandada."

Los apelantes han señalado en su alegato escrito varios errores de hecho y algunos de derecho como cometidos por la corte inferior al dictar la sentencia recurrida pero, tanto en su extensa argumentación escrita como en su informe oral, han prescindido en absoluto de considerar los atribuídos errores de derecho y se han limitado a los de hecho por lo que nosotros seguiremos su misma conducta.

Los hechos de este caso, las conclusiones a que llegó la corte sentenciadora y la razón de su decisión en el conflicto de la evidencia están tan claramente expuestos en la opinión que escribió el Hon. Juez Jacinto Texidor como fundamento de su sentencia, que transcribiremos de ella todo lo referente a esos extremos.   Dice así:

"Providencia Colón, como madre de María Gil y Petronila Colón, menores de edad, sobre los que ella tiene la patria potestad, ha presentado demanda y ejercitado acción contra la Sucesión de Don José Manuel Batista, compuesta de la viuda Julia Durán y el hijo

Manuel Batista Durán.    La demandante ha pedido a la corte, que dicte sentencia declarando:

."A. Que María Gil y Petronila Colón son hijas naturales reconocidas de José Manuel Batista, con derecho a usar su apellido, y a participación en su herencia.

"B. Que el juicio de divorcio seguido ante esta corte por José Manuel Batista contra Paula Rodríguez, civil No. 411, y la sentencia allí recaída son nulos.

"C. Que la institución de herederos hecha por José Manuel Batista en su testamento de 14 de noviembre de 1917, en favor de su hijo legitimado Manuel Batista Durán, es nula.

"Las alegaciones fundamentales de la demanda pueden resumirse en esta forma:

"La demandante alega ser madre, con patria potestad de María Gil y Petronila Colón, de 15 y 12 años de edad respectivamente.    Asímismo alega—

"Que la Sucesión de José Manuel Batista se compone de su viuda Julia Durán Aquino, y de su hijo Manuel Batista Durán.    Esta alegación ha sido admitida por la demandada.

"Que José Manuel Batista contrajo matrimonio con Paula Rodríguez en 1870.    Admitida también esta alegación.

"Que Paula Rodríguez pereció ahogada en el pueblo de Utuado, siendo arrastrada por la corriente durante el ciclón de 8 de agosto de 1899.

"Que José Manuel Batista, durante los años 1900 a 1907, siendo viudo, sostuvo relaciones de concubinato con la demandante Providencia Colón, que era soltera; y que ambos podían entonces casarse sin impedimento; y que de tal concubinato y amorosas relaciones nacieron las dos hijas, María Gil en 24 de enero de 1903, y Petrolina en 18 de diciembre de 1906.    Que a estas niñas, desde que nacieron, y luego constantemente, las tuvo José Manuel Batista como a sus hijas naturales, y así las llamaba, y atendía a su subsistencia y gastos, teniéndolas públicamente como hijas, y continuando esa relación y estado hasta el fallecimiento de Batista.

"Que Batista, en noviembre de 1917, contrajo matrimonio con Julia Durán, de la que tenía un hijo, Manuel.    Alegación admitida.

"Que Batista falleció en Cataño el 2 de enero de 1918.    Alegación admitida.

"Que los demandados Julia Durán y su hijo se niegan a reconocer el carácter de hijas naturales de Batista, a las llamadas María Gil y Petronila.    Los demandados admiten que se niegan a reconocer tal

carácter, y alegan que lo hacen así porque esas niñas nunca fueron reconocidas por Batista como hijas, y no lo son.

"Alegan además la demandante que, en 1905, José Manuel Batista intentó promover ante la Corte Municipal de Utuado procedimiento para justificar que su esposa Paula Rodríguez había perecido ahogada durante el ciclón de 8 de agosto de 1899; y que en el mismo año, constándole que su esposa Paula Rodríguez había muerto en 1899, entabló contra ella demanda de divorcio, ante la Corte de Distrito de San Juan: que mediante la falsa manifestación de que su esposa Paula Rodríguez estaba viva, y mediante prueba de los testigos que falsamente afirmaron tal hecho, obtuvo de la corte una sentencia, en 2 de enero de 1906, declarando la ruptura del vínculo matrimonial, que ya se hallaba disuelto desde la muerte de la esposa; y que en todo caso, la sentencia dictada en aquel pleito fué nula porque la corte no tenía jurisdicción, ya que la demandada no fué personalmente emplazada, ni se archivó el emplazamiento, ni se solicitó el emplazamiento por edictos, ni se ordenó éste por la corte.

"Y finalmente, alega también que José Manuel Batista, falleció bajo testamento cerrado, otorgado en 14 de noviembre de 1917 que fué declarado tal testamento por resolución de esta corte en 14 de enero de 1918, y que en ese testamento Batista no nombró ni instituyó herederas a sus hijas Petronila y María Gil, pero sí al legitimado Manuel Batista Durán, quien, en unión de la viuda Julia Durán, poseen hoy los bienes de la herencia. Los demandados admiten la existencia del testamento, y el hecho de que en él no se nombra ni instituye a las citadas María Gil y Petronila, pero alegan que no son tales hijas naturales del testador.

"Los demandados, en su contestación, aparte de las admisiones ya anotadas, alegan:

"A. Niegan las alegaciones de la primera causa de acción, o sea la de filiación; y además alegan que las demandantes no tienen causa para ejercitar la acción de filiación, porque ellas fueron concebidas y nacieron, siendo José Manuel Batista casado con Paula Rodríguez.

"B. En cuanto a la segunda causa de acción, niegan las alegaciones especiales de la misma, relativas al procedimiento de divorcio en lo que se refiere a la falsedad de las manifestaciones de Batista y la prueba, y la falta de jurisdicción en la corte. Y alegan como materia nueva: Que Paula Rodríguez, cuando se separó de José Manuel Batista, contrajo relaciones amorosas con otro hombre, del que tuvo una hija, Vicenta; y hoy existen dos personas que dicen llamarse Ana y Pedro Batista que se dicen hijos naturales de Vicenta,

y tienen promovido pleito ante esta corte, reclamando parte de la herencia de Batista; y que ellos no son nietos de Batista, y sí pueden serlo de Paula Rodríguez, por lo que tendrían interés en este pleito, y serían parte necesaria en el mismo.   Alegaron también que la demandante, sorprendiendo la buena fe de su abogado, ha estado preparando prueba falsa para este pleito.

"C. En cuanto a la tercera causa de acción, los demandados han admitido la existencia del testamento, como antes se ha anotado, esto es con su alegación de que las demandantes no son hijas naturales de Batista.

"Pidieron los demandados que se citara en este pleito a Ana y Pedro Batista, como parte.

"En este estado de alegaciones se ha llegado al juicio.

"Este es un caso en el que el juez tiene que proceder con toda cautela al hacer el análisis de la prueba.   Es lamentable que lo mismo que quedan estampadas las palabras y las frases de los testigos, no quedaran también fijas en el record, aunque lo están en la memoria del juez, las actitudes, los gestos, y hasta la mirada de los testigos, que completan sus frases de una forma gráfica.   Un gesto, una inflexión de la voz, una mirada, revelan y descubren, en la mayoría de las ocasiones, estados de ánimo, y posibilidades y aún probabilidades de verdad o mentira en la expresión; porque, regularmente, ese gesto o esa inflexión de voz son irreprimibles y no nacen de cálculo previo.

"Ha habido en este caso acusaciones, ya abiertas, ya veladas, de que se había intentado falsear la prueba, por las partes.   Es casi innecesario que la corte diga que, dada la limpia reputación de los abogados que en el caso intervienen, ninguna de esas acusaciones, hechas a las partes litigantes, han rozado siquiera a los Letrados.

"Estudiemos, por partes, la prueba.

"En un primer conjunto de hechos, estudiaremos si María Gil y Petronila, son o no, las hijas de José Manuel Batista: y si éste las tuvo por sus hijas naturales y las atendió como a tales.

"Establezcamos antes ciertos hechos que están admitidos como ciertos por las dos partes, son ellos:

"1. José Manuel Batista contrajo matrimonio con Paula Rodríguez en 1870.

"2. José Manuel Batista contrajo matrimonio con Julia Durán en 1917.

"3. José Manuel Batista, falleció en enero de 1918 bajo testamento cerrado otorgado en 14 de noviembre de 1917, cuyo testamento

es tal por declaración hecha por la corte de distrito. En ese testamento aparece nombrado como hijo e instituído como heredero Manuel Batista Durán, hijo legitimado de José Manuel Batista y Julia Durán. No se nombra ni instituye como herederos a las hijas de Providencia Colón.

"En cuanto a la prueba de las relaciones amorosas y concubinato entre Batista y Providencia Colón, y el consiguiente nacimiento de las dos niñas María Gil y Petronila, la corte entiende que las alegaciones de la demanda, relativas a esos hechos, se han probado de una manera convincente, por los testigos presentados por la demandante, y especialmente por los siguientes:

"Dr. Acisclo Bou de la Torre.—Este testigo conoce a las dos niñas desde muy pequeñas, y las ha prestado asistencia médica, por orden de José Manuel Batista, quien le ordenaba que le cargara a su cuenta las visitas, porque las niñas eran sus hijas, y así se lo dijo al testigo en más de una ocasión; sabe que Batista las trataba como hijas.

"Ramón Rivera Fuentes.—Este testigo conoció por muchos años a Batista y a Providencia Colón, y sabe que vivieron en concubinato, bajo el mismo techo, siendo Providencia soltera, y allá por 1900 a 1902; conoce a las niñas, como las hijas de Batista y la Colón, y dice que Batista las sostenía, alimentaba y vestía, pagando todos sus gastos, y las trataba como hijas; y afirma que Batista le dijo que ellas eran sus hijas. El testigo afirmó que fué íntimo amigo de Batista, y durante el contra-interrogatorio sostuvo firmemente sus aserciones.

"José Manuel Medina, hijo ilegítimo de José Manuel Batista, fué otro testigo de importancia en cuanto a este extremo. El ha dicho que vivió con su padre siempre; que conoce a Providencia Colón desde niña; que ella, por los años 1900 a 1902 vivió con José Manuel Batista como un año más o menos, y después Batista compró para ella seis cuerdas de terreno y le hizo una casa, a la que él siguió yendo; que Providencia era la querida de Batista, y tuvo del mismo dos hijas, María Gil y Petronila, a las que el testigo conoce; y el testigo fué padrino de Petronila, por indicación de José Manuel Batista, que le dijo que el testigo sabía que la niña era hija suya, y que él Batista, quería que fuera su padrino. Que Batista vivía con la Colón públicamente, y todos tenían a las niñas como hijas de Batista, y el testigo las tiene como hermanas; que Batista atendía a todas las necesidades de las niñas, y a todos sus gastos, y ante el mismo testigo Batista ha entregado dinero para Providencia Colón; que Batista trataba públicamente a las niñas como hijas, y al testigo

y sus hermanos les dijo siempre que aquellas niñas eran sus hijas. En el contra interrogatorio se mantuvo el testigo en sus aseveraciones; y preguntado acerca de si es enemigo de Julia Durán, dijo que no, y que al hijo de ella lo consideraba como su hermano. Realmente, la corte no llegó a convencimiento, ni aún a presunción de que este testigo hubiera faltado a la verdad en su declaración.

"Esta prueba ha producido en la corte la convicción de que María Gil y Petronila Colón, son hijas de José Manuel Batista y Providencia Colón, quienes vivieron en concubinato, al tiempo de la concepción y al del nacimiento de esas niñas; que esas niñas fueron siempre, pública y privadamente, tenidas por José Manuel Batista como sus hijas, y como tales sostenidas y alimentadas y cuidadas por él.

"Y pasemos al problema del pleito; esto es, si al tiempo de la concepción de esas niñas era Batista viudo o casado.

"Antes de entrar en la prueba con respecto a ese extremo, desea la corte establecer, que resulta probado que Providencia Colón, en la época de la concepción y en la del nacimiento de sus hijas María Gil y Petronila, era soltera en aptitud para contraer matrimonio. Y asimismo, que se ha probado que María Gil Colón nació el 24 de enero de 1903 y Petronila Colón el 18 de diciembre de 1906.

"La corte, como cuestión de hecho, declara probado:

"Que en el año 1899, ocurrió en Puerto Rico, o pasó por Puerto Rico un ciclón, en el mes de agosto; que en esa fecha Paula Rodríguez, esposa de José Manuel Batista, vivía en el barrio de Limón, Utuado, separada de su esposo; que ese día del ciclón Paula Rodríguez fué a guarecerse en la casa de Francisco Domenech, en cuya casa fué vista desde por la tarde, sin que se haya probado que saliera de allí, y sí que permaneció en la casa; que en la noche del mismo día en que ocurrió el ciclón, o sea el 8 de agosto de 1899, el río que estaba próximo a la casa de Domenech hizo una gran avenida; que en esa misma noche, la casa de Domenech, en la que se hallaba Paula Rodríguez, fué arrastrada y destruída por la corriente del río, y perecieron todos los que en ella estaban, menos un joven que se llama Joaquín Laffossé; que se encontraron, después del ciclón, numerosos cadáveres, en estado de descomposición, pero de las personas que aquella noche se hallaban en la casa de Domenech, no se encontró más cadáver que el de un hombre llamado Demetrio y el de la suegra de Joaquín Massonet, esposa del dueño de la casa; que Batista investigó luego acerca de si había perecido Paula Rodríguez, y adquirió la firme creencia de que ella había muerto ahogada esa noche. De la prueba, apreciada en conjunto, la corte ha adquirido el firme conven-

cimiento de que Paula Rodríguez fué una de las personas que se ahogaron esa noche del 8 de agosto de 1899, en el río, y en la casa de Domenech arrastrada por tal río.

"En este particular es donde, durante el juicio, se ha encarnizado más la contienda. Y la corte no quiere pasar adelante sin analizar algunos extremos de importancia.

"Los testigos Joaquín Massonet, Pedro Rodríguez Batista y Juan Colón, vieron en la casa de Domenech a Paula Rodríguez, en distintas ocasiones y horas del 8 de agosto de 1899, y cuando algunas personas se retiraron de la casa, Paula se quedó en ella.

"El testigo J. Britapaja declaró que días después del ciclón, Batista estaba inquiriendo si Paula Rodríguez había perecido ahogada, y él estaba viendo cadáveres de personas ahogadas en el ciclón.

"A los testigos Acisclo Bou, Pedro Rodríguez Batista, Ramón Rivera Fuentes, y José Manuel Medina, manifestó Batista su seguridad de que Paula Rodríguez había perecido ahogada el día del ciclón; y con alguno de ellos fué a buscar información, y luego consejo, para inscribir la defunción de Paula, y para dejar legalizada su situación.

"Se ha presentado prueba relativa a que Paula Rodríguez fué vista viva después de ese día 8 de agosto. Algún testigo ha dicho que vió a Paula en casa de Amalia Colón, tía del testigo, un año después del ciclón, y que ella estaba en busca de una hija suya; y el mismo testigo, en su misma declaración directa, dice luego que cuando vió a Paula Rodríguez fué el año 1903 ó 1904. Se ha presentado prueba de refutación con referencia a la declaración de este testigo, y se ha probado que él no era pariente de Amalia Colón, que esta señora murió un año después del ciclón, y que la hija de Paula Rodríguez había fallecido en el año 1900.

"Un testigo Manuel Corominas, dijo que en 1900, había visto a Paula Rodríguez, en Mameyes, barrio de Utuado, y que la vió una sola vez, y en casa de la familia del testigo. No encontró la corte este testimonio positivo y firme, y no pudo esta declaración explicar a la corte, el por qué de estas aisladas apariciones de Paula Rodríguez, en barrios distintos, lejanos de aquél en que ella vivía, y presentándose a una o dos personas que casualmente se hallaban en el sitio a que ella venía; y en cambio, los que, como Batista, la buscaban con todo interés, no tuvieron nunca ni la suerte de encontrarla, ni la de dar con esas personas que entonces la vieron, y que le pudieran dar noticias de su paradero. La corte no pudo, ni puede, dar crédito a este testigo, cuya declaración no ofreció, ni en su lógica, ni en la actitud del testigo, condiciones para convencer al juez.

"Celestino Zambrana, dijo que Paula Rodríguez, en la tarde del ciclón se hallaba en casa de Domenech, y que no se ahogó porque se pasó a casa de Juan de los Reyes Candelario, y que ella al día siguiente fué quien les hizo el café; que Paula se pasó a esa casa a las tres de la tarde. Este testigo también dice que vió a Paula en Arecibo un año después del ciclón, y que ella iba sola. El juez tiene que confesar que le llama la atención el hecho de que si Paula pasó la noche en casa de Juan de los Reyes, y no en casa de Domenech; si ella fué la que preparó el café para los que allí estaban, aún a pesar de que el dueño de la casa tenía allí a su esposa que lógicamente era la llamada a preparar el café y atender a los allí refugiados, no se hayan traído a este juicio algunas de las personas que pernoctaron en casa de Juan de los Reyes, que parece fueron muchas, y venga un testigo solo, y aislado. El testimonio que asevera que Paula Rodríguez pasó la noche esa en la casa de Domenech, parece al juez más fuerte, más positivo, y digno de crédito. Es cierto que Joaquín Massonet incurrió en alguna contradicción, de detalle; pero era preciso oir y ver a este testigo; que se presentó ante la corte en un estado tal de enfermedad, con una fatiga extremada, que casi no le permitía hablar, y expuesto a los errores inevitables en quien se encuentra bajo la acción de un gran cansancio morboso. Aún así, este testigo y Juan Colón, presentaron una prueba suficiente de refutación del testimonio de Zambrana, de quien dice Colón que vivía como a unos cinco kilómetros de distancia de la casa de Juan de los Reyes, y afirma que Paula Rodríguez no salió de casa de Domenech; y que en casa de Juan de los Reyes estuvo el testigo esa noche; y que a la mañana les hizo el café Sandalia Batista que era la señora de Juan de los Reyes. Este testigo afirma que en esa ocasión Zambrana estaba al otro lado del río, en casa de Justo Candelario, y allí pasó la noche, y al día siguiente pasó el río en una balsa de yagrumo, y vino a casa de Juan de los Reyes.

"De este mismo testigo Zambrana, nota la corte que es el único que ha dicho (pág. 125 record taquigráfico) que Paula Rodríguez después del ciclón continuó viviendo en el mismo barrio cinco o seis meses. Comparada esta aserción con la prueba toda del caso, nos parece de tal manera contraria a la verdad, que ella sería suficiente para hacer increíble la declaración de Zambrana.

"Y en esta materia de aseveraciones sospechosas, la corte desea hacer constar que mientras de casi todo el testimonio en el caso resulta claramente que Batista se casó con Paula Rodríguez obligado, y no vivió con ella más que unos días, el testigo José Colón dice que

durante un año después del casamiento estuvo el testigo yendo a casa de Batista, y encontraba allí a Paula. Si comparamos este testimonio con el de las personas más allegadas a Batista, tendremos que concluir que este testigo Colón no ha dicho verdad, y que es dudoso que conociera a Paula Rodríguez como él dice.

"Examinemos la evidencia con respecto a si Providencia Colón quiso ·o no sobornar testigos.

"Quiere la corte expresar aquí, que tanto por la prueba, como por la apariencia de Providencia Colón, se ve que ella es una mujer que lucha con la miseria. Ella es una lavandera en un pueblo pequeño. Y este es un dato que nos lleva a considerar con más cuidado una acusación de tentativa de soborno, como lo que contra ella se hace. La corte, apreciando la prueba de las dos partes, no cree que Providencia Colón ofreciera a ningún testigo una suma de ·50 dollars que para ella era algo como una .fortuna, fortuna que no parece llegó a tener ni en los tiempos en que vivía en concubinato .con Batista. Y menos puede la corte creer que esta mujer fuera a hacer estos ofrecimientos a personas a las que había hablado una o dos veces. Y si esta mujer tiene testigos como el Dr. Bou, Medina, Pedro Rodríguez Batista y otros más, es increíble que fuera a ofrecer dinero a los que acaso no habían visto nada que a ella le importara probar:

"El juez que suscribe declara que el testimonio en cuanto al soborno, no le ha convencido, y que no puede darle crédito para extraer una inferencia en contra de la parte demandante.

"El juez tiene como probado que José Manuel Batista tenía conocimiento de que su esposa Paula Rodríguez había perecido ahogada la noche del 8 de agosto de 1899 en el río que pasa por el barrio de Limón; que sabiendo eso, estableció ante esta corte de distrito demanda de divorcio, en la que falsamente afirmó que la dicha Paula Rodríguez estaba viva; y así continuó el procedimiento, y òbtuvo sentencia de divorcio en el pleito No. 411, de esta corte, en el año 1907.

"Se ha probado el testamento de José Manuel Batista, y el hecho de que en él no se nombra a las hijas naturales María Gil y Petronila, que son las representadas en este pleito, ni se les asigna herencia alguna."

Como todos los motivos de error tratados por los apelantes se fundan en que la corte sentenciadora abusó de su discreción al apreciar la prueba, hemos hecho un examen de la evidencia y hemos llegado a la conclusión de que la corte

inferior no cometió el abuso de discreción que se le atribuye al decidir el conflicto de la evidencia y estamos conformes con ella en todos los particulares que hemos copiado de su opinión.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Hutchison.